UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**MICHAEL SWIDLER, and**
**JILL SWIDLER,** on behalf of
themselves and all others similarly
situated,

       **Plaintiffs,**

**vs.**

**GEORGIA-PACIFIC CORP.,**
a Georgia corporation;
**GEORGIA-PACIFIC GYPSUM, LLC**
a Delaware limited liability company;
**GEORGIA-PACIFIC CANADA, ULC** f/k/a
**GEORGIA-PACIFIC CANADA, INC.,**
a Canadian unlimited liability company;
**84 LUMBER COMPANY, L.P.,**
a Pennsylvania corporation, and
JOHN DOE DEFENDANTS 1-50,

       **Defendants.**

_____/

**CLASS REPRESENTATION**

**CASE NO.:** 5:09-cv-181-Oc-10GRJ

**JURY TRIAL DEMANDED**

**INJUNCTIVE RELIEF SOUGHT**

**SECOND AMENDED**
**CLASS ACTION COMPLAINT**

    **COME NOW,** the Plaintiffs, MICHAEL and JILL SWIDLER, by and through their undersigned counsel and bring this action on their behalf and on behalf of a class of persons defined below against GEORGIA-PACIFIC CORP., GEORGIA-PACIFIC GYPSUM, LLC, GEORGIA-PACIFIC CANADA, ULC (collectively "GEORGIA-PACIFIC"), and 84 LUMBER COMPANY, L.P. ("84 LUMBER") and Defendants, and allege the following upon information and belief except as to the allegations concerning Plaintiffs themselves:

## INTRODUCTION

1.      Until the filing of this action, the defective drywall causing damage to tens of thousands of homes within the Southeastern United States was thought to have been manufactured exclusively by Chinese companies.  However, this consumer class action claims that North American companies such as GEORGIA-PACIFIC have manufactured defective drywall as well.

2.      Investigation conducted prior to the filing of this Complaint concluded that drywall manufactured by GEORGIA-PACIFIC is causing sulfur contamination and damages in multiple homes within the state of Florida.

3.      Plaintiffs bring this class action on behalf of themselves and all owners of homes in the State of Florida that were built using GEORGIA-PACIFIC drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold by Defendant GEORGIA-PACIFIC, and sold to the consuming public by Defendant 84 LUMBER, or other supply companies not yet identified.

4.      The drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants to build the homes of Plaintiffs and the Plaintiff Class Members is defective and emits sulfide and/or other volatile organic chemical compounds that cause excessive corrosion of metal components within the home including but not limited to HVAC coils and refrigerator units, electrical wiring and plumbing components, and other household items, as well as creates noxious odors.

5.      The sulfide emitted from Defendants' defective drywall is a known pollutant that causes irritation and allergy-type symptoms and reactions such as coughing, sinus and throat infection, eye irritation, respiratory problems and other health related issues.

2

6.     Defendants' drywall is inherently defective and not suitable for its intended use because it emits sulfide which causes corrosion to metal components of the home and also causes irritation and allergy type symptoms in people living in homes containing the defective drywall.

## JURISDICTION

7.     This action is filed in this Federal Court pursuant to diversity jurisdiction under the Class Action Fairness Act of 2005, as codified at 28 U.S.C. § 1332(d)(2).

8.     The amount in controversy exceeds five million dollars considering the length of the class period and the number of Plaintiffs and Class Members that have purchased the defective product within the state of Florida.

9.     There is complete diversity between Plaintiffs and the Defendants in this matter as Plaintiffs and Plaintiff Class Members are citizens and residents of the state of Florida; Defendant GEORGIA-PACIFIC CORP is a Georgia corporation headquartered in Atlanta, Georgia; Defendant GEORGIA-PACIFIC GYPSUM LLC is a Delaware limited liability company, also headquartered in Atlanta, Georgia; Defendant GEORGIA-PACIFIC CANADA, ULC is a Canadian unlimited liability company headquartered in Alberta, Canada; and, Defendant 84 LUMBER COMPANY, L.P. is a Pennsylvania corporation headquartered in Eighty Four, Pennsylvania.

## VENUE

10.     Defendant GEORGIA-PACIFIC has and continues to conduct business throughout the state of Florida at all relevant times, including the Middle District of Florida.

11.     Defendant 84 LUMBER has and continues to conduct business throughout the state of Florida at all relevant times, including the Middle District of Florida.

3

12.    Actions giving rise to the named Plaintiffs' claims occurred in Lake County, Florida, which provides for federal jurisdiction in the Middle District of Florida, Ocala Division.

## PARTIES

13.    Plaintiffs, MICHAEL and JILL SWIDLER, are residents of Lake County, Florida and own a home located at 11101 Versailles Boulevard, Clermont, FL 34711-7346.

14.    Defendants GEORGIA-PACIFIC CORP. and GEORGIA-PACIFIC GYPSUM, LLC are nationwide companies doing business in the state of Florida.    Both companies' headquarters are located in Atlanta, GA 30303.    Defendant GEORGIA-PACIFIC CORP. is an indirect wholly owned subsidiary of Koch Industries Inc., which is a Kansas corporation headquartered in Wichita, Kansas.

15.    GEORGIA-PACIFIC CANADA, ULC f/k/a GEORGIA-PACIFIC CANADA INC., is a Canadian unlimited liability company, headquartered in Alberta, Canada, doing business in Canada and the United States.    GEORGIA-PACIFIC GYPSUM, LLC and GEORGIA-PACIFIC CANADA, ULC are subsidiaries of GEORGIA-PACIFIC CORP., the parent company.

16.    Throughout this Complaint, all the GEORGIA-PACIFIC Defendants will be referred to as "GEORGIA-PACIFIC," as all three companies directly or indirectly manufacture and sell ToughRock® gypsum drywall.    "ToughRock" is a registered trademark of Georgia-Pacific, www.gp.com/build/productgroup for its gypsum board building products.    Under Florida law, non-metallic building materials may be trademarked as "goods."    *See* Fla. Stat. Ann. § 495.111(1)(a)(19).

17.    GEORGIA-PACIFIC specializes in the manufacture and sale of numerous building products, including drywall.    GEORGIA-PACIFIC sells these products directly through

4

dealers, distributors, mass retailers and home improvement centers such as Lowe's. Defendant 84 Lumber is one of GEORGIA-PACIFIC's authorized dealer/distributors for ToughRock® gypsum drywall. *See* www.gp.com/build/Dealerlocator (last visited Oct. 27, 2009) (listing "84 Lumber # 1302" in Sanford, Florida, and "84 Lumber # 1320" in Tavares, Florida).

18.     Defendant 84 LUMBER is a nationwide company doing business in the state of Florida.  84 LUMBER's corporate headquarters is located at 1019 Route 519, Eighty Four, PA 15330-2813.

19.     84 LUMBER is a building product and materials supplier/distributor and dealer for professional contractors and consumers throughout the United States including the state of Florida.

### FACTS (GENERAL ALLEGATIONS)

20.     "Drywall" is the common term for rigid paper-faced gypsum boards or panels regularly used in the construction industry in the United States.  The gypsum used to make GEORGIA-PACIFIC drywall was mined or collected from various locations throughout North America.

21.     The ToughRock® gypsum drywall installed in Plaintiffs' home emits harmful and corrosive sulfide which causes significant oxidation of various metals located throughout the home.  Metal components such as air conditioning coils, electric motors and other metal components in dishwashers, microwaves, smoke detectors, computers and other household appliances prematurely oxidize and fail as a result of the sulfide emitted from the defective drywall.

22.     GEORGIA-PACIFIC manufactures gypsum drywall marketed under the trade name "ToughRock."  GEORIA-PACIFIC's ToughRock® gypsum drywall contains excessive

amounts of sulfur-based compounds which cause it to emit sulfide into the homes in which it is installed.   When the ToughRock's sulfur-based gases or sulfides are released into the home corrosion occurs to the metal components throughout the home.

23.    GEORGIA-PACIFIC manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold defective gypsum drywall in Florida and the United States, which was unreasonably dangerous for its normal use in that the drywall caused, and continues to cause, corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components.

24.    The sulfide released from the defective drywall further makes the product unreasonably dangerous for its normal intended use because it causes people to suffer allergy-type symptoms such as coughing, sinus and throat infections, eye irritations, respiratory problems and other health concerns.

25.    GEORGIA-PACIFIC's defective drywall detrimentally affects and ultimately requires the replacement of a variety of household items, including but not limited to, air conditioning units, dishwashers, microwaves, lighting fixtures, faucets and silverware.   In addition, the defective drywall has a noxious odor.

26.    Considering the size of GEORGIA-PACIFIC's operations and the method in which drywall is manufactured, a significant amount, and most likely several million square feet of its defective drywall was used in the construction of Florida homes between 2004 and the date of the initial Complaint in this matter.

27.    During the building boom that occurred in Florida between 2004 and 2007, drywall became scarce and the price significantly increased.  This price increase caused suppliers to ship drywall from plants that were often far from the construction location.

28.     Plaintiffs MICHAEL and JILL SWIDLER began construction of their home located at 11101 Versailles Boulevard, Clermont, Florida on or about March of 2006. Michael Swidler is a builder by trade and has been employed doing residential construction by Lennar Homes, Engle Homes and Deluca Homes for that past 15 years.

29.     Plaintiff, MICHAEL SWIDLER, acted as owner/builder in the construction of his family home and personally ordered and paid for the ToughRock® gypsum drywall which is the subject of this action.

30.     In May of 2006, Plaintiff SWIDLER ordered 289 sheets of half-inch drywall from Defendant 84 LUMBER's store located in Tavares, Florida.  84 LUMBER is and was the authorized dealer for GEORGIA-PACIFIC ToughRock® gypsum drywall and selected and sold the ToughRock® gypsum drywall on behalf of GEORGIA-PACIFIC pursuant to an established, regular and continuing distribution, dealership and sales relationship it has and continues to have with GEORGIA-PACIFIC.  In this respect, Plaintiffs purchased the ToughRock® gypsum drywall directly from GEORGIA-PACIFIC and 84 LUMBER, as 84 LUMBER, on information and belief, did not alter, add to or otherwise modify the ToughRock® gypsum drywall, and simply selected and delivered it and then accepted payment therefor.

31.     On or about June 1, 2006, 84 LUMBER employees delivered 289 sheets of GEORGIA-PACIFIC "ToughRock" drywall to the building site in Clermont, Florida.

32.     84 LUMBER employees delivered the drywall to the building site and placed the drywall inside the dried-in structure per Plaintiff SWIDLER's instructions.

33.     The GEORGIA-PACIFIC "ToughRock" drywall was installed and finished by Plaintiffs' drywall subcontractor in accordance with industry standards and GEORGIA-PACIFIC's installation guidelines.

7

34.    At no time did the drywall at issue become wet or exposed to the elements.

35.    Construction was completed, and the Plaintiffs moved into their new home in October of 2006.

36.    Plaintiffs have two young children who live in the home with them.

37.    In early 2007, the plumbing fixtures and several silver picture frames in the Plaintiffs' home started to oxidize or corrode.

38.    On or about January 14, 2008, the coils in the Plaintiffs' upstairs HVAC unit developed a leak and failed despite being less than 2 years old.  Plaintiffs paid to have the HVAC coils replaced.

39.    On or about July 8, 2008, the coils in the Plaintiffs' upstairs HVAC unit developed another leak and failed again despite the coils being replaced six months prior.  Again, Plaintiffs paid to have the HVAC coils replaced.

40.    The coils in the Plaintiffs' downstairs HVAC unit failed on or about December 22, 2007 and had to be replaced.

41.    On or about April of 2008, the microwave in Plaintiffs' home failed due to the keypad failing to operate properly.  A new keypad was ordered and installed to remedy the problem.

42.    On or about August of 2008, the main bulb in Plaintiffs' television went out although the television was less than one year old.

43.    On or about February of 2009, the dishwasher in Plaintiffs home failed due to the copper wiring surrounding the copper leads in the control unit of the device having completely deteriorated.   The repairman informed the Plaintiffs that the "copper wiring inside the wire nuts was gone which caused the malfunction."  It was subsequently replaced.

44.    On or about July 2009, the coils in both the Plaintiff's upstairs and downstairs HVAC units failed for a third time.

45.    The smoke detectors in the Plaintiffs' home randomly go off without cause, and the home has a strong odor throughout.

46.    All the copper ground wires attached to every light-switch and outlet in the home have turned black and are rapidly oxidizing.  The extent of the damage to the remaining wire inside the walls of the home is yet to be determined.

47.    On information and belief, significant damage has been done to other household items such as television and stereo components and computer components within the SWIDLER home.  Pieces of Plaintiff, JILL SWIDLER's jewelry have also turned black and prematurely oxidized as a result of the sulfide released from the defective drywall.

48.    On or about April 8, 2009, Plaintiffs MICHAEL AND JILL SWIDLER and their two children moved out of their family home as a result of exposure to and damages caused by Defendants' defective ToughRock® gypsum drywall.

49.    Plaintiffs and their children suffered from physical ailments associated with sulfide exposure including allergy-type symptoms and reactions such as coughing, sinus and throat infection, eye irritation, respiratory problems and other health related issues.

50.    The defect in the ToughRock® gypsum drywall is latent and is not an attribute of natural gypsum drywall.  To the extent one or both of defendants have attempted to disclaim implied or express warranties or liability for latent and hazardous defects associated with the ToughRock® gypsum drywall, those disclaimers are unconscionable, because defendants – in light of their expertise and control of the product, the probability of the harm flowing from the latent defect, their ability to test for and avoid that harm, and the widespread and massive costs

9

such avoidable harm will impose on consumers, insurers, mortgagees, lien holders and other end users or finance companies connected to the product – are clearly better able to avoid the costs, insure against the losses and minimize the likelihood of and damages arising from such latent, sulfide-related defects.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a Class defined as follows:

> **All persons who own a home in the State of Florida in which GEORGIA-PACIFIC "ToughRock" Drywall was installed between 2004 and 2009.**
>
> **A subclass exists which is defined as all persons in the State of Florida that purchased defective Georgia-Pacific "ToughRock" Drywall from any 84 Lumbar Company location during the class period.**

52.     *Numerosity:*    The Class is composed of thousands of persons geographically dispersed throughout the State of Florida, the joinder of whom in one action is impractical.    The Class is ascertainable and identifiable.    Membership in the Class can be determined by product identification codes and manufacture dates stamped on the back of all GEORGIA-PACIFIC ToughRock drywall.    Defendants may also be able to determine the identity of Class members from their own records.

53.     *Commonality:* Questions of law and fact common to the Class exists as to all members of the Class and predominate over any questions affecting only individual members of the Class.    These common legal and factual issues include the following:

> a.      Whether GEORGIA-PACIFIC manufactured and sold a defective product;
>
> b.      Whether Defendant 84 LUMBER sold a defective product;

c.    Whether GEORGIA-PACIFIC's conduct in manufacturing and/or distributing their drywall fell below the duty of care owed to Plaintiffs and      members of the Class;

d.    Whether 84 LUMBER's conduct in selling defective drywall fell below the duty of care owed to Plaintiffs and members of the Class;

f.    Whether Plaintiffs and the Plaintiff Class Members are entitled to recover compensatory, exemplary, punitive, and/or other damages as a result of Defendants' conduct;

g.    Whether Defendants breached express warranties;

h.    Whether Defendants breached implied warranties of merchantability; and

i.    Whether the Plaintiff Class is entitled to compensatory damages and, if so, the nature and extent of such damages.

54.    *Typicality*:    Plaintiffs' claims are typical of the claims of the Plaintiff Class as all such claims arise out of Defendants' uniform course of wrongful conduct complained of herein.

55.    *Adequacy of Representation:*    Plaintiffs will fairly and adequately protect the interests of the Members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including product and construction cases.

56.    *Predominance and Superiority:*    This Class action is appropriate for certification because questions of law and fact common to the Members of the Class predominate over questions affecting only individual Members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Members of the Class is impracticable.  Should individual Class Members be required to bring separate actions, this Court and courts throughout the state of Florida would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk

of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case

basis, in which inconsistent results will magnify the delay and expense to all parties and the court

system, this class action presents far fewer management difficulties while providing unitary

adjudication, economies of scale and comprehensive supervision by a single Court.

57.    This action is also properly certified under the provisions of F.R.C.P. 23 because:

a.    the prosecution of separate actions by individual members of the Class would create a risk of inconsistency of varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants; and

b.    due to the nature of the relief sought, the prosecution of separate actions by the individual members of the Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or would substantially impair or impede the ability of such members of the Class to protect their interests.

58.    Defendants' actions will require Plaintiffs and the Plaintiff Class Members to

evacuate their homes, remove all defective drywall from the homes, perform extensive remedial

repairs to the homes, and then repair the damaged property made visible during the performance

of these repairs.

59.    Plaintiffs and the Plaintiff Class Members will also be required to repair or

replace corroded or damaged household items such as dishwashers, microwaves, lighting

fixtures, plumbing fixtures, electronics, jewelry and silverware.

60.    As a result, Plaintiffs and the Plaintiff Class Members have suffered, and continue

to suffer damages as a result of Defendants' defective drywall and the corrosive effects of the

sulfide emissions.  These damages include, but are not limited to, the costs of inspection, the

costs and expenses necessary to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes and personal property.

61.    Defendants' actions also resulted in substantial diminution in the value of Plaintiffs and the Plaintiff Class Members' homes. Homes with defective drywall have virtually no value on today's market as no consumer is willing to purchase a home with such extensive defects and potential health concerns.

62.    Defendants had a duty to exercise reasonable care in inspecting, marketing and/or selling drywall placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause and/or did not cause damage as described herein.

63.    Defendants breached their duty by failing to exercise ordinary care in the inspecting, marketing and/or selling drywall Defendants placed into the stream of commerce in that it knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes, pipes, and other metal components in and around the home.

64.    Defendants knew or should have known that consumers such as Plaintiffs and the Plaintiff Class Members would suffer damage as a result of Defendants' failure to exercise ordinary care.

65.    Many Class Members, like Plaintiffs have had to evacuate their homes and rent a new residence for their family while continuing to pay the mortgage on the home containing the defective drywall.

66.    Plaintiffs specifically disclaim that this action seeks to determine or litigate any

personal injuries or physical damages caused to the person of any Class Member. Although Plaintiffs themselves assert their individual claims related to their own physical injuries and pain and suffering caused by their exposure to the defective drywall at issue, the Class Action allegations contained in this action do not purport to assert any such claims on behalf of the putative Class Members.

### COUNT I
### NEGLIGENCE
### AGAINST GEORGIA-PACIFIC AND 84 LUMBER

67.    Plaintiffs, MICHAEL and JILL SWIDLER, individually and on behalf of all others similarly situated, repeat, reiterate and reallege paragraphs 1 through 65 of this Complaint, with the same force and effect as if fully set forth herein.

68.    GEORGIA-PACIFIC and 84 LUMBER had a duty to exercise reasonable care in inspecting, marketing and/or selling drywall placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause and/or did not cause damage as described herein.

69.    Defendants breached their duty by failing to exercise ordinary care in the inspecting, marketing and/or selling drywall Defendants placed into the stream of commerce in that it knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion of metal components in the home such as HVAC coils, refrigerator units, wires, tubes and pipes, as well as the repair or replacement of personal property such as appliances, computers or other electronic devices or equipment.

70.    The negligence of the Defendants, their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

14

a.    inspecting, marketing and/or selling drywall without thoroughly testing it;

b.    inspecting, marketing and/or selling drywall without adequately testing it;

c.    selling drywall without performing proper and sufficient tests to determine the dangers to its users;

d.    negligently failing to adequately and correctly warn the Plaintiffs and Plaintiff Class Members and the public, of the dangers of Defendants' drywall;

e.    negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

f.    negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

g.    negligently representing that Defendants' drywall products were safe for its intended purpose when, in fact, its safety is questionable;

71.    Defendants were negligent in the inspecting, marketing and/or selling of GEORGIA-PACIFIC's drywall in that they:

a.    failed to conduct adequate end-use testing to determine the safety of the drywall; and,

b.    failed to warn Plaintiffs and Plaintiff Class Members, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

72.    Despite the fact that Defendants knew or should have known that its drywall caused unreasonably dangerous side effects in the form of corrosion to metal components throughout the home due to emission of sulfide, Defendants continued to supply, market and/or sell drywall to the Plaintiffs, the Plaintiff Class Members and/or the consuming public.

73.    Defendants knew or should have known that consumers such as Plaintiffs and the Plaintiff Class Members would suffer damages and/or be at an increased risk of suffering

damage and injury as a result of Defendants' failure to exercise ordinary care.

74.    Defendants' actions and/or inactions as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence *per se*.

75.    Defendants' negligence was the proximate cause of Plaintiffs' and the Plaintiff Class Members' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

76.    As a result of the foregoing acts and omissions, the homes of Plaintiffs and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur significant repair and replacement costs, repairs for appliances, personal property and other related expenses.  Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, as a result of the defective drywall.

77.    The Swidler Plaintiffs individually, and not on behalf of the Plaintiff Class, assert that they and their children have suffered from physical ailments associated with sulfide exposure including allergy-type symptoms and reactions such as coughing, sinus and throat infection, eye irritation, respiratory problems and other health related issues as a result of sulfide emissions from the defective drywall.

**COUNT II**
**STRICT PRODUCTS LIABILITY**
**AGAINST GEORGIA-PACIFIC AND 84 LUMBER**

78.    Plaintiffs, MICHAEL AND JILL SWIDLER, individually and on behalf of all others similarly situated, repeat, reiterate and reallege paragraphs 1 through 65 of this Complaint, with the same force and effect as if fully set forth herein.

79.    This is an action for strict products liability against GEORGIA-PACIFIC.

80. This is an action for strict products liability against 84 LUMBER.

81. The defective gypsum drywall installed in Plaintiffs' home and the homes of the Plaintiff Class Members was manufactured by GEORGIA-PACIFIC and supplied by 84 LUMBER.

82. The defective gypsum drywall manufactured by GEORGIA-PACIFIC, and distributed, supplied, and/or sold by 84 LUMBER is unreasonably defective because it causes damage and injury to Plaintiffs and the Plaintiff Class Members by and through the emission of sulfide as described more fully herein.

83. The defective gypsum drywall manufactured, distributed, supplied and/or sold by Defendants directly and proximately caused and continues to cause damage property beyond itself, including, but not limited to corrosion of HVAC coils and refrigerator units, microwaves, dishwashers, electrical wiring and plumbing components, and has caused several Plaintiff Class Members to move out of their homes further causing economic harm in the form of increased living expenses, moving costs, etc.

84. As a result of the foregoing acts and omissions, Plaintiffs and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, moving expenses, rent, and other incidental and related expenses. Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, additional living expenses, moving expenses, etc. as a result of Defendants defective drywall.

85. The Swidler Plaintiffs individually, and not on behalf of the Plaintiff Class, assert that they and their children have suffered from physical ailments associated with sulfide

17

exposure including allergy-type symptoms and reactions such as coughing, sinus and throat infection, eye irritation, respiratory problems and other health related issues as a result of sulfide emissions from the defective drywall.

## COUNT III
## BREACH OF IMPLED WARRANTY OF MERCHANTABILITY
## AGAINST GEORGIA-PACIFIC AND 84 LUMBER

86.     Plaintiffs, MICHAEL AND JILL SWIDLER, individually and on behalf of all others similarly situated, repeat, reiterate and re-allege paragraphs 1 through 85 of this Complaint, with the same force and effect as if fully set forth herein.

87.     This is an action against ALL DEFENDANTS for breach of the implied warranty of merchantability under the common law and/or Florida Statute § 672.314.

88.     GEORGIA-PACIFIC is the manufacturer, supplier, distributor and seller of the ToughRock® gypsum drywall products in the United States including the State of Florida.

89.     84 LUMBER is a dealer/distributor and merchant of various building products at its locations throughout the United States, including the GEORGIA-PACIFIC "ToughRock" drywall.

90.     Pursuant to Florida Statute 672.314 and/or common law, Defendants warranted that the drywall was merchantable and reasonably fit for the ordinary purpose for which drywall is normally used in residential and commercial construction projects in the state of Florida.

91.     Defendants breached the implied warranty of merchantability by selling Plaintiffs and the Plaintiff Class Members ToughRock® gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used.

92.     The drywall that was manufactured, supplied and sold by GEORGIA-PACIFIC

18

through 84 LUMBER and was installed in Plaintiffs' home and the homes of the Plaintiff Class Members and is not fit for its intended use because it emits sulfide which causes damage to various metal components as described above.

93.     As a result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses.  Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs.

94.     The defect in the ToughRock® gypsum drywall is latent and is not an attribute of natural gypsum drywall.  To the extent one or both of defendants have attempted to disclaim implied or express warranties or liability for latent and hazardous defects associated with the ToughRock® gypsum drywall, those disclaimers are unconscionable, because defendants – in light of their expertise and control of the product, the probability of the harm flowing from the latent defect, their ability to test for and avoid that harm, and the widespread and massive costs such avoidable harm will impose on consumers, insurers, mortgagees, lien holders and other end users or finance companies connected to the product – are clearly better able to avoid the costs, insure against the losses and minimize the likelihood of and damages arising from such latent, sulfide-related defects.

95.     The Swidler Plaintiffs individually, and not on behalf of the Plaintiff Class, assert that they and their children have suffered from physical ailments associated with sulfide exposure including allergy-type symptoms and reactions such as coughing, sinus and throat

infection, eye irritation, respiratory problems and other health related issues as a result of sulfide emissions from the defective drywall.

**COUNT IV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY IMPROVEMENT ACT**
**AGAINST GEORGIA-PACIFIC AND 84 LUMBER**

96.    Plaintiffs, MICHAEL AND JILL SWIDLER, individually and on behalf of all others similarly situated, repeat, reiterate and re-allege paragraphs 1 through 95 of this Complaint, with the same force and effect as if fully set forth herein.

97.    Plaintiffs and the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

98.    Each Defendant is a "supplier," "warrantor," and "service contractor" as defined by 15 U.S.C. §§ 2301(4), 2301(5), and 2301(8).

99.    The Drywall is a "consumer product" as defined by 15 U.S.C. § 2301 (1).

100.    The Magnuson-Moss Warranty Improvement Act ("MMWA") requires Defendants to be bound by all warranties implied by state law.

101.    Section 15 U.S.C. § 2310(d)(1) of the MMWA provides that a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any State.

102.    Defendants breached the implied warranty of merchantability by selling defective ToughRock drywall that emitted sulfide into the homes of Plaintiffs and the Plaintiff Class Members.

103.    Defendants have been on notice of the alleged breach since at least April 2009, having received such notice from Plaintiffs on behalf of themselves and the Class, but have failed to cure the breach.

104.    As a result of Defendants' breach, Plaintiffs and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses.  Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs.

105.    To the extent one or both of Defendants have attempted to disclaim implied or express warranties or liability for the latent and hazardous defects associated with the ToughRock® gypsum drywall, those disclaimers are unconscionable under the MMWA, because Defendants – in light of their expertise and control of the product, the probability of the harm flowing from the latent defect, their ability to test for and avoid that harm, and the widespread and massive costs such avoidable harm will impose on consumers, insurers, mortgagees, lien holders and other end users or finance companies connected to the product – are clearly better able to avoid the costs, insure against the losses and minimize the likelihood of and damages arising from such latent, sulfide-related defects.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and Plaintiff Class Members demand judgment against the Defendants, jointly and severally, as follows:

An Order certifying the Class, appointing MICHAEL AND JILL SWIDLER as Class Representatives and appointing Varnell & Warwick, P.A. as counsel to the Class;

a.    Equitable, injunctive, and declaratory relief;

b.    Damages in an amount to be determined at trial, but in an amount exceeding 75 thousand dollars;

c.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.    Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

e.    The costs and disbursements incurred by Plaintiffs and Plaintiff Class Members in connection with this action, including reasonable attorneys' fees;

f.    All statutory damages;

g.    Disgorgement of Defendants' profits from the sale of drywall;

h.    Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiffs may be entitled;

i.    Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, MICHAEL AND JILL SWIDLER, individually and on behalf of the Plaintiff Class Members, hereby demand a trial by jury as to all issues so triable.

DATED:    November 6, 2009

Respectfully submitted,

/s Brian W. Warwick_____ _____
BRIAN W. WARWICK
Florida Bar No.:  0605573

22

JANET R. VARNELL
Florida Bar No. 0071072
**VARNELL & WARWICK, P.A.**
20 La Grande Boulevard
The Villages, Florida  32159
Phone:  (352) 753-8600
Fax:      (352) 753-8606
bwwarwick@aol.com

Seth Lesser, Esquire
New York Bar No.: 2265585
**KLAFTER OLSEN & LESSER LLP**
Two International Drive, Suite 350
Rye Brook, New York   10574
Phone:  (914) 934-9200
Fax:      (914) 934-9220
seth@klafterolsen.com

Michael D. Donovan, Esquire
Pennsylvania Bar No.: 51895
**DONOVAN SEARLES, LLC**
1845 Walnut Street, Suite 1100
Philadelphia, Pennsylvania  19103
Phone:  (215) 732-6067
Fax:      (215) 732-8060
mdonovan@donovansearles.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of November, 2009, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system and that a true and correct copy of the foregoing has been furnished via electronic mail, to:

Adam L. Hoeflich    adam.hoeflich@bartlit-beck.com

Andrew C. Baak    andrew.baak@bartlit-beck.com

Carolyn J. Frantz    carolyn.frantz@bartlit-beck.com

Martha M. Pacold    martha.pacold@bartlit-beck.com

William F. Hamilton    william.hamilton@hklaw.com

Elizabeth Lewis Bevington    elizabeth.bevington@hklaw.com

John G. Ebken    john.ebken@bipc.com

Jon Taylor Gatto    jon.gatto@bipc.com

S. Manoj Jegasothy    manoj.jegasothy@bipc.com

Samuel W. Braver    samuel.braver@bipc.com

/s Brian W. Warwick
BRIAN W. WARWICK

24